UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUSAN I. HEATH, Proposed Representative of the Estate of Henry A. Hurst, III, Deceased,<br><br>         Plaintiff,<br><br>    -against-<br><br>ECOHEALTH ALLIANCE,<br><br>         Defendant. | Case No. 1:23-cv-08930 (JLR)<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

  Susan I. Heath ("Heath" or "Plaintiff"), the proposed representative of the Estate of Henry A. Hurst, III, brings this suit alleging negligence and strict liability claims against Defendant EcoHealth Alliance ("Defendant" or "EHA"). Plaintiff alleges that Defendant was negligent and should be held strictly liable for its subgrant of research funds to the Wuhan Institute of Virology ("WIV") because the WIV created a deadly coronavirus that leaked from its laboratory, causing the worldwide COVID-19 pandemic and subsequent death of her husband. Defendant moves to dismiss the Complaint in its entirety. For the reasons that follow, the Court GRANTS Defendant's motion.

## BACKGROUND

### I. Factual History[1]

  Plaintiff is a Colorado resident and the widow of Henry A. Hurst, III ("Hurst"). Dkt. 2 ("Compl.") ¶ 1. Defendant is a nonprofit organization headquartered in New York, New

---

[1] Unless otherwise stated, the following facts are taken from the Complaint or documents attached to the Complaint, and are assumed true for purposes of this motion. *See Humphries v. Mitsubishi Chem. Am., Inc.*, No. 23-cv-06214 (JLR), 2024 WL 4711296, at 1 n*1 (S.D.N.Y. Nov. 7, 2024); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (extrinsic documents may be considered part of the pleadings if, among other things, they are "attached to the complaint"). Plaintiff and Defendant each attach numerous documents to

York. Compl. ¶ 2.[2]  Defendant received grant money from the National Institutes of Health ("NIH") and National Institute of Allergy and Infectious Diseases ("NIAID"). Compl. ¶¶ 3, 4, 13. Between 2014 to 2019, the NIH and NIAID, through Defendant, provided some of that funding to the WIV. Compl. ¶ 13. In 2019, more than $76,000 was allocated to the WIV. *Id.* In 2019, the WIV was researching coronaviruses, including through a type of research called "gain-of-function research," which is expected "to increase the transmissibility and/or virulence of pathogens." Compl. ¶ 12.

Plaintiff alleges that COVID-19 leaked from the WIV lab in September 2019. Compl. ¶ 11. In 2021, Hurst contracted COVID-19 and subsequently passed away on October 11, 2021. Compl. ¶ 18; Dkt. 2-1 at 1.

## II.  Procedural History

Plaintiff initiated this action on October 11, 2023. *See generally* Compl. On March 11, 2024, Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil

---

their motion to dismiss briefing, *see* Dkt. 31; Dkts. 37-1, 37-2, 37-3, 37-4, 37-5, 37-6, 37-7, 37-8, 37-9, 37-10, 37-11; Dkt. 38-1, the vast majority of which the Court does not consider. *See Trahan v. Lazar*, 457 F. Supp. 3d 323, 341 (S.D.N.Y. 2020) (courts determining the adequacy of a claim under Rule 12(b)(6) are "generally limited to 'facts stated on the face of the complaint,'" though they may consider extrinsic documents if they are (1) attached to the complaint, (2) incorporated by reference into the complaint, or (3) integral to the complaint (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016))).

[2] The Court has an obligation to ensure that it has subject matter jurisdiction. *See Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 206-07 (2d Cir. 2024) ("[F]ederal courts must ensure that they do not *lack* subject-matter jurisdiction, even if the parties fail to identify any jurisdictional defect . . . ."); *Tounkara v. Republic of Senegal*, No. 21-cv-08027 (LAK), 2023 WL 2692434, at *1 n.1 (S.D.N.Y. Mar. 29, 2023) ("A federal court has an independent obligation to resolve an issue of subject matter jurisdiction regardless of whether it was raised by the parties."). Although Plaintiff does not plead the appropriate citizenship of Defendant in citing only to its headquarters location, Compl. ¶ 2, Defendant has confirmed that it is incorporated in Massachusetts with its principal place of business in New York. Dkt. 31 ("Daszak Decl.") ¶ 3. The Court therefore has jurisdiction over this matter under 18 U.S.C. § 1332(a)(1).

Procedure ("Rule") 12(b)(6), Dkt. 30 ("Br."), and filed one declaration in support of the motion to dismiss, Dkt. 31.  The parties completed briefing on May 13, 2024.  *See* Dkt. 37 ("Opp."); Dkt. 38 ("Reply").  Plaintiff filed a number of exhibits in support of her opposition.  *See* Dkts. 37-1, 37-2, 37-3, 37-4, 37-5, 37-6, 37-7, 37-8, 37-9, 37-10, 37-11.  Defendant filed one exhibit in support of its reply.  *See* Dkt. 38-1.

## LEGAL STANDARD

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  "In deciding a motion to dismiss, the Court must 'accept[] all factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor.'"  *Castillo v. Altice U.S.A., Inc.*, No. 23-cv-05040 (JLR), 2023 WL 8650270, at *2 (S.D.N.Y. Dec. 14, 2023) (alterations in original) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110-11 (2d Cir. 2010)).  However, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Taylor v. Bronx Parent Housing Network*, No. 21-cv-04890 (JLR), 2023 WL 3996620, at *2 (S.D.N.Y. June 14, 2023) (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

Plaintiff brings both negligence and strict liability claims against Defendant.  *See* Compl. ¶¶ 11-20, 21-25.  Defendant seeks to dismiss both claims.  *See* Br. at 1-2.  The Court will address choice of law before considering the substantive claims.

I.  **Choice of Law**

While the parties do not brief choice of law, they both appear to agree that New York law applies. *See* Br. at 1; Opp. at 12. "In diversity actions, federal courts follow the choice-of-law rules of the forum state to determine the controlling substantive law." *Feldman Law Grp. P.C. v. Liberty Mut. Ins. Co.*, 819 F. Supp. 2d 247, 255 (S.D.N.Y. 2011) (footnote omitted), *aff'd*, 476 F. App'x 913 (2d. Cir. 2012) (summary order). "However, where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." *PetEdge, Inc. v. Garg*, 234 F. Supp. 3d 477, 486 (S.D.N.Y. 2017) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). If "[t]he parties' briefs assume that New York substantive law governs the issues . . . such implied consent is . . . sufficient to establish the applicable choice of law." *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2009) (quoting *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001)).

Because the parties' briefs rely on and indicate their assent to the application of New York law and the Court has not identified a strong countervailing public policy, the Court will apply New York law to the negligence and strict liability claims at issue here. *See PetEdge*, 234 F. Supp. 3d at 486 (applying New York law where party implicitly consented by citing exclusively to New York law).

II. **Plaintiff's Negligence Claim (Count I)**

Plaintiff alleges that Defendant negligently funded the WIV and that Defendant's negligence caused the WIV to "create[]" COVID-19, which ultimately led to the death of her husband. *See* Compl. ¶¶ 14-16, 18. Specifically, Plaintiff claims that Defendant was negligent because at the time Defendant funded money to the WIV, it (1) knew or should have known that the WIV was conducting research, including gain-of-function research, into

4

coronaviruses; (2) knew or should have known that there were serious biosafety problems at the WIV; and (3) knew or should have known that Defendant lacked oversight and knowledge of the safety of WIV laboratories.  Compl. ¶ 14.

### A. Legal Standard

The elements of a negligence claim under New York law are "(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach." *Generation Next Fashions Ltd. v. JP Morgan Chase Bank, N.A.*, 698 F. Supp. 3d 663, 682 (S.D.N.Y. 2023) (quoting *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015)).  "Whether a defendant owes a duty of care to a plaintiff 'is a question of law that the Court may properly determine on a motion to dismiss.'" *Id.* (quoting *Qube Films Ltd. v. Padell*, No. 13-cv-08405 (AJN), 2014 WL 3952931, at *7 (S.D.N.Y. Aug. 12, 2014)).

### B. Plaintiff Has Not Stated a Claim for Negligence

Defendant argues that the negligence claim should be dismissed because (1) Plaintiff's claims about the origin and spread of COVID-19 are inconsistent and implausible; (2) Plaintiff has not alleged facts that support the existence of a duty of care owed to Plaintiff or Hurst; and (3) Plaintiff has failed to establish causation.  Br. at 5-13.  The Court need only address Defendant's second argument because "[i]f the defendant owes no duty to the plaintiff, then the action must fail." *Infant ex rel. Stringer v. Bay Shore Union Free Sch. Dist.*, No. 23-cv-03217 (DLI), 2024 WL 4362601, at *4 (S.D.N.Y. Sept. 30, 2024) (quoting *Darby v. Compagnie Nat'l Air France*, 753 N.E.2d 160, 162 (N.Y. 2001)).

"While [a] legislature can create a duty by statute, in most cases duty is defined by the courts, as a matter of policy." *Buchanan ex rel. Buchanan v. Hesse*, 521 F. Supp. 3d 348, 356 (S.D.N.Y. 2021) (alteration in original) (quoting *Lauer v. City of New York*, 733 N.E.2d 184, 187 (N.Y. 2000)), *aff'd*, No. 21-649, 2022 WL 829163 (2d Cir. Mar. 21, 2022) (summary

order). Under New York law, courts generally "fix the duty point by balancing factors, including the reasonable expectation of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1060 (N.Y. 2001) (quoting *Palka v. Servicemaster Mgt. Servs. Corp.*, 634 N.E.2d 189, 193 (N.Y. 1994)).

New York courts have been cautious in extending liability to defendants for their failure to control the conduct of others. *See Hamilton*, 750 N.E.2d at 1061; *SUEZ Water N.Y. Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 552 (S.D.N.Y. 2022) ("New York courts are reluctant to impose a duty of care when there is little expectation that the defendant could prevent the actions of a third party." (citation omitted)). However, a duty may arise where there is a relationship between a defendant and the third party that "encompasses defendant's actual control of the third person's actions," or "between defendant and plaintiff that requires defendant to protect plaintiff from the conduct of others," such as in a relationship between master and servant, parent and child, or common carriers and their passengers. *Hamilton*, 750 N.E.2d at 1061. "The 'key' consideration critical to the existence of a duty in these circumstances is 'that the defendant's relationship with either the tortfeasor or the plaintiff places the defendant in the best position to protect against the risk of harm'; and that 'the specter of limitless liability is not present because the class of potential plaintiffs to whom the duty is owed is circumscribed by the relationship.'" *In re N.Y.C Asbestos Litig.*, 840 N.E.2d 115, 119 (N.Y. 2005) (quoting *Hamilton*, 750 N.E.2d at 1061).

These principles are dispositive here and require dismissal of Plaintiff's negligence claim. Plaintiff's harm arises from the conduct of a third party, the WIV, which was allegedly conducting gain-of-function research in laboratories experiencing "serious biosafety

6

problems," and whose research allegedly created COVID-19 and led to Hurst's death. Compl. ¶¶ 11-12, 14, 18. Plaintiff does not plead that Defendant had any control over the WIV's activities. In fact, Plaintiff pleads just the opposite — that Defendant had "no oversight and no way of knowing how safe the laboratories were where these risky experiments were taking place." Compl. ¶ 14(c). The Complaint does not allege that, once Defendant allocated funding to WIV, it had the "authority or ability — contractual or otherwise — to dictate or suggest what was done with the" funding or in the WIV's laboratories. *SUEZ Water*, 578 F. Supp. 3d at 553. While the Complaint alleges that Defendant provided money to the WIV, it does not even allege that Defendant directed the money to gain-of-function research. *See* Compl. ¶¶ 12-15. Nor does Plaintiff allege facts that would support a relationship between her (or her deceased husband) and Defendant that would require Defendant to protect Plaintiff's husband from the conduct of others. *See generally id.* And while Plaintiff argues in her opposition that her deceased husband and "society as a whole" had a "reasonable expectation" that gain-of-function research would be conducted safely, Opp. at 14, she has not demonstrated that her husband or society as a whole expected that Defendant, who provided some funds to the WIV, would control or had the ability to control the actions of the WIV.

*Hamilton* is instructive. In that case, the relatives of people killed by handguns sued handgun manufacturers alleging negligence, among other claims. *Hamilton*, 750 N.E.2d at 1058-59. The New York Court of Appeals found that the handgun manufacturers had no duty to the plaintiffs, rejecting the plaintiffs' argument that the manufacturers had a duty of care based on their "purported ability to control marketing and distribution of their products" since the "social benefit" of finding such a duty would be outweighed by its "costs and burdens." *Id.* at 1063. The Court emphasized its concerns that imposing such a duty would create an indeterminate class of plaintiffs and defendants, that the pool of plaintiffs was "very

large — potentially, any of the thousands of victims of gun violence," and that the connection between the manufacturers and the eventual victims was too tenuous. *Id.* at 1061-62. Here, too, the "social benefit" of imposing a duty on Defendant would be outweighed by the costs and burdens of imposing a duty. There is a high likelihood that claims against Defendant (and other funders of research related to the coronavirus) would proliferate, particularly since the group of potential claimants is not defined, and instead would reach every person who suffered a loss from the death of a loved one due to COVID-19. *See In re September 11 Litig.*, 280 F. Supp. 2d 279, 293 (S.D.N.Y. 2003) (considering whether claims would proliferate based on whether the claimants were "known and circumscribed by those 'who have, as a result of the[] events,'" suffered the same sort of harm (quoting *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr. Inc.*, 750 N.E.2d 1097, 1103 (N.Y. 2001))). The remote connection between Defendant's allocation of funding to the WIV and Plaintiff's husband's eventual death from COVID-19 would also create the risk of widespread, insurer-like liability, since the class of potential plaintiffs is so large and undefined. As a result, the Court concludes that the burdens of imposing a general duty of care on Defendant outweigh any social benefit, particularly as Plaintiff has alleged no facts that would permit the Court to conclude that Defendant is "in the best position to protect against the risk of harm," *Hamilton*, 750 N.E.2d at 1061.

Indeed, New York courts that have considered similar claims against EHA have dismissed complaints where, as here, plaintiffs failed to allege that EHA had direct dealings with any of the plaintiffs. In *McKinnis v. EcoHealth Alliance*, plaintiffs brought claims against EHA and some of its employees based on the serious health consequences and deaths resulting from contracting COVID-19 during the worldwide pandemic. *See generally* Decision & Order, *McKinnis*, No. 034252/2022 (N.Y. Sup. Ct. Sept. 15, 2023), Dkt. 116. The

court dismissed the negligence claims, reasoning that the defendants did not owe the plaintiffs any duty because plaintiffs made "no claim that any of the [d]efendants had direct dealings with any of the [p]laintiffs," and plaintiffs sought to extend a duty "notwithstanding that they are no different from any other person in the world who became infected with the COVID-19 virus." *Id.* at 7-8. The court emphasized that finding a duty "would undoubtedly result in a proliferation of claims; there would be a high likelihood of unlimited or insurer-like liability on [d]efendants; . . . there would exist negative public policy considerations including the chilling of scientific research necessary for the prevention of, or cure for, future pandemics," and "the class of potential plaintiffs would include over 770 million people." *Id.* at 8.

Similarly, in *Vega v. EcoHealth Alliance, Inc.*, the court dismissed negligence claims brought against EHA because plaintiffs had not established that EHA owed them a duty. Decision & Order at 9, 13, *Vega*, No. 603152/2023 (N.Y. Sup. Ct . Dec. 5, 2023), Dkt. 41. The court in *Vega* also noted that "[p]laintiffs and EcoHealth had no connection to one another, or had the same connection as EcoHealth had with every other person on Earth," and that plaintiffs' attempts to hold EHA liable for the acts of a third party, the WIV, by trying to "tie EcoHealth to [the] WIV's alleged failure to follow proper precautions" were unavailing, since there were "too many gaps in their theory to make that work." *Id.* at 9. So too here. Plaintiff has not demonstrated any connection between herself (or the deceased) and Defendant, nor has she demonstrated that Defendant was involved in any alleged failures by the WIV. For the same reasons set forth in *McKinnis* and *Vega*, extending such a duty to Defendant simply because it funded research by the WIV would result in the proliferation of claims, create a high likelihood of insurer-like liability, and risk the chilling of scientific research.

9

Plaintiff's citation to *Baker v. Saint-Gobain Performance Plastics Corp.,* 232 F. Supp. 3d 233 (N.D.N.Y. 2017), *aff'd in part, appeal dismissed in part*, 959 F.3d 70 (2d Cir. 2020) (per curiam) does not alter this Court's conclusion. Plaintiff argues that *Baker* supports her claim that imposing liability on Defendant would be sensible public policy, since a research organization should not be able to "contribute to the spread of a deadly virus . . . and not be held accountable." Opp. at 15. The Court disagrees with Plaintiff's characterization of *Baker*. *Baker* involved negligence claims brought against defendant-manufacturers whose facilities directly discharged PFOA, a chemical substance, into the surrounding groundwater. *See* 232 F. Supp. 3d at 236-38, 243. The court found that the defendants had a duty not to pollute plaintiffs' drinking water, reasoning in part that it is "sensible public policy to require that manufacturers avoid polluting the drinking water of the surrounding community" and that society has a "reasonable expectation that manufacturers avoid contaminating the surrounding environment." *Id.* at 245-46. The facts of the instant case differ significantly from *Baker*. While *Baker*'s defendants were manufacturers directly responsible for the discharge of PFOA into the water, here, Plaintiff seeks to hold Defendant responsible for the alleged acts of the WIV, a third party, to which Defendant provided some funding for research. The *Baker* defendants had control over the method of disposal that ultimately caused the contamination of the water supply. *Id.* at 243. Here, Plaintiff has not alleged any facts that Defendant controlled, or was positioned to control, the acts of the WIV or how it carried out its research, or even that Defendant's funding contributed to gain-of-function research. As a result, the facts of *Baker* do not persuade the Court that it would be "sensible public policy" to find that Defendant was responsible for the acts of a third-party recipient of research funds.

As a result of Plaintiff's failure to plead facts that support that Defendant had a duty of care sufficient to support a claim of negligence, the Court dismisses Count I.

10

### III. Plaintiff's Strict Liability Claim (Count II)

Plaintiff also brings a strict liability claim against Defendant, alleging that Defendant, "in funding monies [to] the [WIV] to conduct research into coronaviruses, engaged in an abnormally dangerous activity, and is liable for the resulting harm to the Plaintiff's deceased husband . . . regardless of any care taken by [Defendant] to prevent it" because "the harm is the type of risk which makes the activity abnormally dangerous in the first place." Compl. ¶ 25.

#### A. Legal Standard

"One who carries on an ultrahazardous or abnormally dangerous activity is strictly liable for the harm inflicted by the activity." *Abbatiello v. Monsanto Co.*, 522 F. Supp. 2d 524, 531 (S.D.N.Y. 2007); *see also Quattlander v. Ray*, No. 18-cv-03229 (CS), 2021 WL 5043004, at *7 (S.D.N.Y. 2021) (same). Under New York law, courts look to the six-factor test drawn from the Restatement (Second) of Torts and consider the:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Doundoulakis v. Town of Hempstead*, 368 N.E.2d 24, 27 (N.Y. 1977) (quoting Restatement (2d) of Torts § 520); *Quattlander*, 2021 WL 5043004, at *7 (same). No one factor is determinative. *See Doundoulakis*, 368 N.E.2d at 27; *Town of New Windsor v. Avery Dennison Corp.*, No. 10-cv-08611 (CS), 2012 WL 677971, at *12 (S.D.N.Y. Mar. 1, 2012) (same) (citing Restatement (2d) of Torts § 520 cmt. f).

#### B. Plaintiff Has Not Stated a Claim for Strict Liability

Defendant argues that the Court must dismiss the strict liability claim because (1) it is incompatible with her claim for negligence and (2) Plaintiff has not pleaded facts that could

support a claim that Defendant engaged in an abnormally dangerous activity. Br. at 14-16. Without reaching the question of incompatibility, the Court agrees that Plaintiff has not pleaded facts that state a claim for strict liability.

Looking to the strict liability factors, Plaintiff has not pleaded facts that support a claim that Defendant's funding of biomedical research had a high risk of harm or that there was a great likelihood of harm resulting from that funding. Plaintiff argues in her brief that gain-of-function research creates a high risk of harm. *See* Opp. at 19. But the Complaint does not claim that *Defendant* was engaged in gain-of-function research or even that its funding was directed to the WIV's gain-of-function research. Rather, it alleges that the *WIV*'s research "includ[ed] gain of function research" and that Defendant provided funding to the WIV. Compl. ¶¶ 11, 13. Even if the Court construed Plaintiff's Complaint as alleging that Defendant funded WIV's gain-of-function research, Plaintiff pleads no facts that support a plausible claim that providing *funding* for this type of medical research created a high risk of harm or that there was a great likelihood that harm would result. While Plaintiff argues in her opposition brief that there is a high likelihood of harm resulting from a virus leaking from a laboratory, Opp. at 19-20, she does not explain why the activity that Defendant actually engaged in — funding coronavirus research — would have created a high likelihood of a laboratory leak.

Plaintiff also has not demonstrated an inability to eliminate risks associated with funding coronavirus research, even assuming there were such risks. Shifting the analysis back to a lab leak risk, Plaintiff claims in her brief that the risk of a lab leak could not have been eliminated. Opp. at 20. But the Complaint does not contain any factual allegations that support a plausible claim that the risk of a lab leak could not have been eliminated by the exercise of reasonable care. Compl. ¶ 14(b) (only conclusorily alleging that there were

12

"serious" biosafety problems at the WIV laboratories); Decision & Order at 10, *McKinnis*, No. 034252/2022, Dkt. 116 (dismissing plaintiff's strict liability claim because allegations that defendant "performed certain government funded coronavirus scientific research, allegedly under unsafe conditions, or co-authored an article about the origins of Coronavirus-19 with the purpose of misleading the public" were "not abnormally dangerous" and there was not "a high degree of risk that people will be injured because of scientific research or that the harm from scientific research will be great," particularly since "laboratory accidents are rare" and "a laboratory is an appropriate place to carry on scientific research"). More importantly, though, Plaintiff ignores that Defendant did not run the lab but instead allegedly provided some funding for research. The Complaint contains no factual allegations that support a plausible claim that funding coronavirus research is intrinsically dangerous irrespective of the exercise of due care. Instead, Plaintiff's allegations of negligence against Defendant "implicitly acknowledge that the exercise of reasonable care would reduce or eliminate the risk of the activity at issue." *Hill v. Norlite, LLC*, No. 21-cv-00439 (BKS), 2022 WL 1452480, at *7 (N.D.N.Y. May 9, 2022). Indeed, in *Vega*, the court dismissed the strict liability claim brought against EHA, in part because "Plaintiffs [had] not established that the risks could not have been avoided by use of reasonable care." Decision & Order at 11, *Vega*, No. 603152/2023, Dkt. 41.

Plaintiff has further not pleaded any facts that support a plausible claim that funding medical research (even gain-of-function research) is uncommon or inappropriate. And finally, Plaintiff has not pleaded facts sufficient to support a claim that the value to the community of funding biomedical research is outweighed by its dangerous attributes, especially given that Defendant's funding to the WIV was facilitated by a grant from the NIH and the NIAID. Compl. ¶ 13.

In sum, Plaintiff has not alleged facts sufficient to state a plausible claim that Defendant's funding of biomedical research related to the coronavirus was an abnormally dangerous activity. Thus, the Court will dismiss the strict liability claim in Count II.

## IV. Leave to Amend

Plaintiff seeks leave to amend to change her status from proposed representative of Hurst's estate to personal representative. Opp. at 22. She does not request leave to amend the substance of her Complaint. The Court denies Plaintiff's request.

Rule 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *see Farrell v. City of New York*, No. 23-cv-04329 (JLR), 2024 WL 3849333, at *7 (S.D.N.Y. Aug. 16, 2024). "Nonetheless, 'it is within the sound discretion of the district court to grant or deny leave to amend.'" *Farrell*, 2024 WL 3849333, at *7 (quoting *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018)). The Court may deny leave to amend if, among other reasons, "the amendment would be futile." *Goodman v. Goodman*, No. 21-cv-10902 (GHW) (RWL), 2022 WL 17826390, at *21 (S.D.N.Y. Dec. 21, 2022) (citation omitted), *report and recommendation adopted*, 2023 WL 1967577 (S.D.N.Y. Feb. 12, 2023).

Given the Court's foregoing findings on the Defendant's motion to dismiss, granting Plaintiff leave to amend to change her status to personal representative would be futile. Plaintiff's claims fail to state a claim regardless of whether Plaintiff amends her Complaint to change her status to personal representative. *See Page v. U.S. Agency for Glob. Media*, 797 F. App'x 550, 556 (2d Cir. 2019) (summary order) (affirming decision denying leave to amend where proposed amendments would not cure deficiencies in pleading). Therefore, leave to amend is denied.

## CONCLUSION

Defendant's motion to dismiss is GRANTED. Plaintiff's request to amend the Complaint to change her status from proposed representative to personal representative is DENIED. The Complaint is dismissed with prejudice. The Clerk of Court is directed to terminate the motion at Dkt. 30 and close the case.

Dated: December 19, 2024
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge